U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

NOV 0 8 2005

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| SUSAN L. VARNELL | CIVIL ACTION NO. 04-1836 |
| VERSUS | U.S. DISTRICT JUDGE DEE D. DRELL |
| Commissioner of Social Security | U.S. MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION

Susan Varnell ("Varnell") filed this lawsuit seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her claim for social security benefits. The issue to be decided is whether there is substantial evidence in the record to support the finding of the Administrative Law Judge ("ALJ") that Varnell is not disabled.

Varnell is now deceased, and the Court ordered that Varnell's children who have attained the age of majority, Justin Anthony Wade and Delila Mills, be substituted as plaintiffs in this proceeding. The Court also ordered that Varnell's minor children, T.V. and J.V., be substituted as plaintiffs through their temporary legal custodian, Joann B. Beason. Only Varnell's claim for DIB is still viable.[1]

---

[1] During a hearing regarding the proper parties plaintiff, held on August 30, 2005, before the undersigned, the attorney for the claimant's representatives admitted the SSI claim is no longer viable, and that they were proceeding only on Varnell's claim for DIB. 20 C.F.R. § 404.503.

Varnell applied for Social Security Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") on October 17, 2002, alleging an onset date of December 27, 2001. A hearing was conducted by the ALJ on September 24, 2003, at which Varnell appeared and testified, along with her mother and cousin. Varnell was represented by counsel at the hearing. An unfavorable decision was rendered by the ALJ on March 8, 2004. (R. 14-24.) On June 29, 2004, the Appeals Council denied Varnell's Request for Review (R. 4-6), and the decision became the final decision of the Commissioner.

Varnell was forty years old at the time of the administrative hearing. (R. 307.) She has a ninth grade education (R. 307), and her past work experience includes employment as a cashier and bingo floor worker.

To qualify for disability insurance benefits, a claimant must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairment must render the claimant unable to engage in the work

previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th C. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983).

The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But, to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

### Issues

Varnell raises the following issues for review:

(1) The Commissioner erred by finding that Varnell did not meet or medically equal a listed impairment; and

(2) The Commissioner erred by failing to request the presence of medical and vocational experts at Varnell's hearing.

### Factual Background

Varnell was born in 1963, and filed an application for DIB and SSI on October 17, 2002, alleging an onset date of December 27, 2001, due to mental problems. (R. 15, 40, 61.)

Varnell was treated at the Bay Medical Center in Florida for depression in March 2000. She was prescribed Ambien, Remeron, and Buspar. (R. 170.) She was released from the facility with instructions to follow up with Life Management Center for

4

outpatient medication management and counseling. (R. 161.) Her GAF[2] score upon discharge was 60.[3]

Varnell was treated at Apalachee Center for Human Services, Inc., on an outpatient basis from May 2002 through March 2003. (R. 105-112, 239-281.) In June, 2002, Varnell was prescribed Trazodone and Prozac for depression. (R. 105.) A GAF score of 50[4] was assessed. (R. 108, 279.) Varnell called the clinic in September 2002 complaining that the Prozac made her "crazy" and that Trazadone made her "depressed." (R. 269.) Treatment notes indicate that the doctor explained to Varnell that she needed counseling in addition to medication. (R. 267.) She was taken off of the Prozac and Trazodone and was prescribed Depakote and Ambien. (R. 253.)

Varnell received inpatient treatment at the Tallahassee

---

[2]The Global Assessment of Functioning, or GAF, score represents Axis V of the Multiaxial Assessment system. The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. Diagnostic and Statistical Manual of Mental Disorders, Text Revised, pp. 25-30 (4th ed. 2000) ("DSM-IV-TR"). GAF is a standard measurement of an individual's overall functioning level. The GAF score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning with respect to psychological, social and occupational functioning, on a hypothetical continuum of mental health-illness.

[3]A GAF score of 51-60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning

[4]A GAF score of 41-50 indicates serious symptoms OR serious impairment with social, occupational, or school functioning

5

Memorial Behavioral Health Center from October 22, 2002, through October 31, 2002. (R. 230-238.) Her diagnosis upon discharge was bi-polar disorder, personality disorder, microcytosis, nicotine dependence and obesity, and she was taking Seroquel[5], Eskalith CR[6], Klonopin[7], and Ultram for headaches. (R. 231.) Varnell's GAF score was in the 80s.[8]

Varnell was treated at Mansfield Mental Health Clinic from December, 2002, through November 2003, for prescription refills. (R. 282-287.) She was taking Quetiapine[9], Lithium, and Sertraline[10]. Ben Arnold, Ph.D., of the Mansfield Mental Health Clinic prepared a psychological report on September 18, 2003. (R. 288-294.) Dr. Arnold found that Varnell functioned in the "borderline" to "below average" mental ability range. (R. 291.) An MMPI-II test was administered indicating that Varnell may have been exaggerating her symptoms in order to gain attention or services or simply had unusually severe psychological problems.

---

[5] Used to treat psychotic disorders. www.medlineplus.gov

[6] Lithium; used to treat bipolar disorder. www.medlineplus.gov

[7] Used to treat anxiety. www.medlineplus.gov

[8] GAF score of 81-90 indicates absent or minimal symptoms, good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns

[9] Used to treat psychotic disorders. www.medlineplus.gov

[10] Used to treat depression. www.medlineplus.gov

6

(R. 291.) Dr. Arnold noted that anxiety disorder or compulsive personality disorder were likely diagnoses, in addition to bipolar disorder and that schizophrenia should be considered, as well. (R. 292.)

A mental status examination was performed on January 6, 2003, by Thomas E. Staats, Ph.D. (R. 113-115.) Varnell reported that she was suffering from fits of rage, visual and auditory hallucinations, memory problems and word-finding problems. (R. 115.) She was on two medications, which the psychologist noted could diminish neuropsychological functioning. She had atypical visual and auditory hallucination complaints. (R. 115.) Upon examination, Varnell's thinking was adequate and her understanding was intact. Her memory and sustained concentration were suspicious. Persistence was poor, social interaction and adaptation were marginal, and the prognosis was guarded. (R. 115.) A diagnosis was given of bipolar disorder by history, generalized anxiety disorder, and probably cognitive response distortion or medication side effects. (R. 115.)

Dr. Jack L. Spurrier, PhD., a consultative examiner employed by Disability Determinations Services, reviewed Varnell's medical records and found there was insufficient medical evidence for him to complete a mental residual functional capacity assessment due to the atypical description of hallucinations and the suspicious cognitive limitations. (R. 116, 128, 131.)

7

Issue No. 1: Whether the Commissioner erred by finding that Varnell did not meet or medically equal a listed impairment

Plaintiffs claim that Varnell met or medically equaled Listing 12.04, specifically by meeting the requisites of Listing 12.04(3) and 12.04(B)(1), (2), and (3). In order to meet Listing 12.04, affective disorders, the claimant must satisfy the requirements of subsections (A) **and** (B) *or* meet the higher standard of subsection (C). The listing provides in pertinent part:

> **12.04 *Affective disorders*:** Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both **A and B are satisfied,** or when the requirements in C are satisfied.
>
> **A.** Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
>
> AND
>
> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

Plaintiffs argue that Varnell met the criteria of 2.04(A)(3)

and 12.04(B)(1), (2), and (3). First, Plaintiffs argue that subsection (A)(3) was met because Varnell was diagnosed with and treated for bipolar disorder. (R. 230-238, 239-281, 219-229, 282-294.) Next, Plaintiffs argue that 12.04(B)(1) was established by Varnell's testimony that she required assistance with most daily activities (R. 92, 94). Plaintiffs submit that Varnell met the requirements of (B)(2) in that she usually stayed at home. (R. 96.) Additionally, her mother testified that Varnell suffered from panic attacks when around many people. (R. 324.) Next, it is argued that Varnell met (B)(3) in that she had problems concentrating and could not deal with stress. (R. 316.) Varnell testified that her inability to concentrate caused her problems while working at a bingo hall. (R. 312.)

Alternatively, Plaintiffs claim that Varnell met the requisites of 12.04(A)(1)(b),(c),(e),(g), and (h)[11], in addition to 12.04(B)(1),(2), and (3). Specifically, they claim that Varnell's medication for depression caused her to gain weight (R. 308), that she had trouble sleeping (R. 66, 170, 318), that she

---

[11] 12.04(A)(1) provides in relevant part:
Depressive syndrome characterized by at least four of the following:
b. Appetite disturbance with change in weight; or
c. Sleep disturbance; or
e. Decreased energy; or
g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
i. Hallucinations, delusions, or paranoid thinking;

9

suffered from fatigue (R. 316), had difficulties concentrating (R. 96, 97, 269, 310), had thoughts of suicide (R. 167, 223, 237, 313), and hallucinated (R. 61, 113, 219-223, 235, 283, 314, 317).

Finally, it is argued that, in the alternative, Varnell met the requisites of 12.04(C)(3), which provides:

> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Specifically, Plaintiffs argue that Varnell met part C of the listing because she lived with her mother and her mother helped her with many activities. (R. 99.) Plaintiffs claim that constitutes a "highly supportive living arrangement" as required by the listing.

The ALJ determined that Varnell suffered from major depressive disorder, recurrent with psychotic features and personality disorder, not otherwise specified, borderline intellectual functioning, and obesity, impairments that were severe. If a

mental impairment is "severe" under 20 C.F.R. §404.1520a, the ALJ must then determine if it meets or equals a listed mental disorder under 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00-12.09. See also Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001). Here, the ALJ determined that Varnell's severe impairments were not severe enough to meet or medically equal a listing. The ALJ specifically noted that Varnell did not have an affective disorder resulting in marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence or pace. Rather than marked limitations, the ALJ found that Varnell had *moderate* restrictions in her activities of daily living; moderate difficulties in maintaining concentration, persistence and pace; and no repeated episodes of decompensation, each of extended duration. The record supports the ALJ's findings in this regard. (R. 20.) Thus, the ALJ determined, based on the record, that Varnell did not meet two of the four "B" criteria required to meet Listing 12.04.

Further, Plaintiffs argue that Varnell alternatively met the "C" criteria of Listing 12.04. Varnell had a medically documented history of a chronic affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support. Further, Plaintiffs claim that, as per 12.04(C)(3), Varnell had a current

11

history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement because Varnell had been living with her mother. (R. 317-318.) Still, Plaintiff has pointed to no medical evidence or professional opinion stating that Varnell was unable to live alone or had a continued need for her current living arrangement with her mother. The ALJ correctly found that Varnell did not meet Listing 12.04(C).

Finally, the ALJ noted that Varnell did not meet 12.05(c), Mental Retardation and Autism, because she did not have evidence of significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period with a *valid* verbal, performance, or full scale IQ of 60 through 70, and other physical or mental impairments imposing an additional and significant work-related limitation of function resulting in <u>marked</u> limitations. Dr. Arnold found that Varnell functioned in the "borderline" to "below average" mental ability range (R. 291), but he did not classify her as mentally retarded. He found that a classification as "borderline" or "below average" was appropriate despite Varnell's low IQ score. Varnell was cooperative and attentive during her psychological evaluation. Dr. Arnold concluded that Varnell's thought processes were logical, coherent and relevant, though tangential at times. (R. 290.) Varnell was "oriented to all spheres and her immediate memory was

accurate." (R. 290.) Thomas E. Staats, Ph.D., classified Varnell's memory and concentration examination as "suspicious." (R. 115.) No treating or consultative professional classified Varnell as mentally retarded, and the ALJ concluded that Varnell had only moderate, not marked, limitations.

Based on the forgoing discussion, the Court finds that substantial evidence exists in the record to support the ALJ's finding that Varnell did not meet or medically equal a listed impairment.

Issue No. 2: <u>Whether the Commissioner erred by failing to request the presence of medical and vocational experts at Varnell's hearing</u>

First, Plaintiffs claim that the ALJ should have called a medical expert (ME) to testify at Varnell's hearing. However, the claimant has the burden of proof in establishing a disability. It is entirely within the discretion of the ALJ whether to request the assistance of a medical expert in determining whether the claimant is disabled, either by testimony or through a consultative examination. 20 C.F.R. § 416.927(f)(2)(iii). It was not necessary for the ALJ to call a medical expert to testify at the hearing. The record contains reports and notes from Varnell's treating doctors. These sources provided sufficient evidence upon which the ALJ could make a determination regarding Varnell's medical problems.

Furthermore, Plaintiffs have not shown that Varnell or her

attorney ever requested the presence of a medical expert. Further, Varnell was represented by counsel who could have produced any additional medical evidence desired. The claimant must show prejudice in the form of evidence before the district court that would have altered the outcome. See Kane v. Heckler, 731 F.2d 1216, 1219-20 (5th Cir. 1984). Varnell has failed to present such evidence.

Next, the plaintiffs submit that the ALJ erred by failing to call a vocational expert (VE) to testify at the hearing. The Fifth Circuit has consistently held that once the ALJ determines that a claimant suffers from a nonexertional impairment that prevents him from performing his past relevant work, the Commissioner must produce expert vocational testimony or other similar evidence to establish that other jobs exist in the nation economy that the claimant can perform. See Fields v. Bowen, 805 F.2d 1168, 1170 (5th Cir. 1986). "Nonexertional" impairments are defined as "certain mental, sensory, or skin impairments" or "impairments [which] result solely in postural and manipulative limitations or environmental restrictions." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e).

The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. A vocational expert is able to compare all the unique requirements of

a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specified job. Id. at 1171.

In the present case, the ALJ concluded that Varnell suffered from severe mental impairments of major depressive disorder, recurrent with psychotic features, personality disorder not otherwise specified, borderline intellectual functioning, and obesity, which precluded her from doing her past relevant work (R. p. 24). However, the ALJ found Varnell did not have any exertional impairments and retained the physical ability to perform work at all exertional levels except as reduced by moderate limitations in her ability to understand, remember and carry out complex and detailed job instructions; but, Varnell can understand, remember, and carry out short, simple job instructions with moderate limitations in her ability to interact appropriately with the general public, respond appropriately to work pressures, and to changes in a routine work setting (R. p. 24).

In concluding Varnell's nonexertional mental impairment did not preclude her from working, the ALJ relied on Social Security Ruling 85-15, 1985 WL 56857, *3 (S.S.A.), which states:

> "Given no medically determinable impairment which limits exertion, the first issue is how much the person's occupational base--the entire exertional span from sedentary work through heavy (or very heavy) work--is reduced by the effects of the nonexertional impairment(s). This may range from very little to very much, depending on the nature and extent of the impairment(s). In many cases, a decisionmaker will need

15

> to consult a vocational resource.
>
> * * *
>
> If, despite the nonexertional impairment(s), an individual has a large potential occupational base, he or she would ordinarily not be found disabled in the absence of extreme adversities in age, education, and work experience. (This principle is illustrated in rules 203.01, 203.02, and 203.10 and is set out in SSR 82-63, PPS-79, Medical-Vocational Profiles Showing an Inability to Make an Adjustment to Other Work.)"

The ALJ also relied on Rule 204 of Appendix II, the Medical-Vocational Guidelines, which states in pertinent part,

> "The residual functional capacity to perform heavy work or very heavy work includes the functional capability for work at the lesser functional levels as well, and represents substantial work capability for jobs in the national economy at all skill and physical demand levels. Individuals who retain the functional capacity to perform heavy work (or very heavy work) ordinarily will not have a severe impairment or will be able to do their past work - either of which would have already provided a basis for a decision of 'not disabled'. Environmental restrictions ordinarily would not significantly affect the range of work existing in the national economy for individuals with the physical capability for heavy work (or very heavy work). Thus an impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse."

The ALJ concluded Varnell's nonexertional impairments do not significantly reduce the range of work she can perform work at all exertional levels, noting that none of Varnell's doctors had suggested she was incapable of performing simple, repetitive functions (R. p. 22). Since the ALJ concluded that Varnell could perform work at all exertional levels, the ALJ further concluded Varnell's mental impairment did not provide a basis for disability

16

since she could perform work such as the various assembly-type jobs, which require working with things rather than with the public (R. p. 23). Compare, <u>Hernandez v. Heckler</u>, 704 F.2d 857, 863 (5th Cir. 1983). Also, <u>Bapp v. Bowen</u>, 802 F.2d 601, 605 (2d Cir. 1986).

Since a vocational expert was not needed in this case, substantial evidence supports the Commissioner's conclusion that Varnell was not disabled.

## Conclusion

Based on the forgoing, it is RECOMMENDED the claimant's appeal be DENIED AND DISMISSED WITH PREJUDICE.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM**

ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____ day of November, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE